# EXHIBIT 1



Doc#: 0802522017 Fee: $46.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 01/25/2008 10:07 AM Pg: 1 of 12

## MORTGAGE

THIS MORTGAGE is dated **JANUARY 1, 2008** and is made by **13ᵀᴴ & STATE, L.L.C.**, an Illinois limited liability company, 2215 York Road, Oak Brook, Illinois 60523 ("Mortgagor") for the benefit of **RJE INVESTMENTS LLC**, an Illinois limited liability company, 2600 Internationale Parkway, Woodridge, Illinois 60517 ("Mortgagee").

Mortgagor heretofore executed and delivered to Mortgagee that certain Promissory Note dated August 10, 2005 ("the Note") in the principal amount of ten million dollars ($10,000,000.00). All of the terms and provisions of the Note are hereby incorporated herein by this reference to the same extent as though fully set forth in this Mortgage.

For $10.00 and other good and valuable consideration, Mortgagor covenants and agrees as follows:

**1.** **Indebtedness Hereby Secured**. "Indebtedness Hereby Secured" means the principal, interest, and other sums of money required to be paid by Mortgagor under the Note and under this Mortgage; provided, however, that the dollar amount of the indebtedness secured by this Mortgage shall not exceed $20,000,000.00.

**2.** **Mortgage of the Property**. Mortgagor does by these presents grant, demise, release, alien, pledge, mortgage, convey, and warrant unto Mortgagee and Mortgagee's successors and assigns the property legally described on the Exhibit attached hereto (the "Property") and all of Mortgagor's estate, right, title, and interest therein and all fixtures, machinery, appliances, and equipment of every nature whatsoever now or hereafter owned by Mortgagor and located in or on, or attached to, or used or intended

Bry 334

D pgs

to be used in connection with or with the operation of, the Property, and all extensions, additions, improvements, betterments, renewals, substitutions, and replacements to any of the foregoing, together with all easements, rights of way, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances whatsoever, in any way belonging, relating, or appertaining to the Property or which hereafter shall in any way belong, relate, or be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and all the estate, right, title, interest, property, possession, claim, and demand whatsoever, at law as well as in equity, of Mortgagor of, in, and to the same and all rents, royalties, issues, profits, revenue, income, and other benefits therefrom to be applied against the Indebtedness Hereby Secured.

## 3.   Payment of Indebtedness and Performance of Covenants.

A.   Mortgagor shall pay when due the Indebtedness Hereby Secured.

B.   Mortgagor shall duly and punctually perform and observe all of the terms, provisions, conditions, covenants, and agreements on Mortgagor's part to be performed or observed as provided herein, in the Note, and in any and all other documents or instruments heretofore, now, or hereafter executed by Mortgagor in connection with or given as additional security for the Note or as evidence of or regulating or guaranteeing the Indebtedness Hereby Secured.

## 4.   Maintenance, Repair, Compliance with Laws, and Covenants and Restrictions With Respect to Use.   Mortgagor shall do or cause to be done each and every one of the following: (a) promptly repair, restore, replace, or rebuild any portion of the Property which may become damaged or be destroyed; (b) keep the Property and all portions thereof in good condition and repair, free from waste; (c) cause to be paid all operating costs of the Property; (d) comply with all requirements of zoning, building, health, fine, traffic, environmental, and other statutes, ordinances, rules, regulations, orders, decrees, and other requirements of law relating to the Property or any part thereof by any federal, state, or local authority; (e) refrain from any action and correct any condition which would increase the risk of fire or other hazard to the Property or any portion thereof; (f) comply with any restrictions and covenants of record with respect to the Property and the use thereof; (g) observe and comply with any conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including without limitation zoning variances, special exceptions, and nonconforming uses), privileges, franchises, and concessions that are applicable to the Property or its use and occupancy; and (h) pay when due, as provided herein any indebtedness which may be secured by a lien or charge on the Property, and upon request exhibit to Mortgagee satisfactory evidence of such payment.  Mortgagor shall not cause, suffer, or permit without the prior written consent of Mortgagee, which consent may be withheld in the exercise of Mortgagee's sole discretion: (i) any action or omission which shall result in the waste or diminution in value of the Property or any

2.

REDACTED

portion thereof or which shall in Mortgagee's judgment impair Mortgagee's security hereunder; or (ii) any zoning reclassification with respect to the Property.

5. **Taxes and Liens**. Mortgagor shall pay or cause to be paid when due, and before any penalty attaches, all general and special taxes, assessments, charges, sewer charges, and other fees, taxes, charges, and assessments of every kind and nature whatsoever levied or assessed against the Property or any part thereof or any interest therein or any obligation or instrument secured hereby, and all installments thereof and all obligations secured by mortgages or other liens against the Property.

6. **Insurance**. Mortgagor will insure the Property against such perils and hazards, and in such amounts and with such limits, as Mortgagee may from time to time require. All insurance policies shall be in such form and amounts and written by such insurance companies as are reasonably satisfactory to Mortgagee and with loss payable to Mortgagee, as its interest may appear as the holder of this Mortgage, as well as standard waiver of subrogation endorsements, and provide that the coverage shall not be terminated or materially modified without 30 days' advance written notice to Mortgagee and shall provide that no claims shall be paid thereunder without 10 days' advance written notice to Mortgagee.

7. **Condemnation and Eminent Domain**. Any and all proceeds of awards heretofore or hereafter made or to be made to the present, or any subsequent, owner of the Property by any governmental or other lawful authority for the taking, pursuant to condemnation or eminent domain proceedings (or settlement in lieu thereof), of all or any part of the Property (including any award from the United States government at any time after the allowance of a claim therefor, the ascertainment of the amount thereto, and the issuance of a warrant for payment thereof), are hereby assigned by Mortgagor to Mortgagee, which awards Mortgagee is hereby authorized to collect and receive from the condemnation authorities, and Mortgagee is hereby authorized to give appropriate receipts and acquittance therefor.

8. **Mortgagee's Performance of Mortgagor's Obligations**. Upon the occurrence of an Event of Default hereunder, Mortgagee, either before or after acceleration of the Indebtedness Hereby Secured or the foreclosure of the lien hereof and during the period of redemption, if any, may, but shall not be required to, make any payment or perform any act herein required of Mortgagor (whether or not Mortgagor is personally liable therefor) in any form and manner deemed expedient to Mortgagee. Mortgagee may, but shall not be required to, rent, operate, and manage the Property and pay operating costs and expenses, including management fees, of every kind and nature in connection therewith, so that the Property shall be operational and usable for its intended purposes. All monies paid, and all expenses paid or incurred in connection therewith, including reasonable attorney's fees and other monies advanced by Mortgagee to protect the Property and the lien hereof, or to complete construction, furnishing, and equipping or to rent, operate, and manage the Property or to pay any such operating costs and expenses thereof or to keep the Property operational and

3

usable for their intended purpose, shall be so much additional Indebtedness Hereby Secured, whether or not the Indebtedness Hereby Secured, as a result thereof, shall exceed the face amount of the Note, and shall become immediately due and payable on demand; and with interest thereon at an annual interest rate (the "Default Rate") equal to 3% above the Base Rate (as defined in the Note). Inaction of Mortgagee shall never be considered as a waiver of any right accruing to it on account of any default nor shall the provisions of this Paragraph 8 or any exercise by Mortgagee of its rights hereunder prevent any default from constituting an Event of Default hereunder. Mortgagee, in making any payment hereby authorized:

A.     Relating to taxes, may do so according to any bill, statement, or estimate, without inquiry into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof.

B.     For the purchase, discharge, compromise, or settlement of any lien, may do so without inquiry as to the validity or amount of any claim for lien which may be asserted.

C.     In connection with the completion of construction, furnishing, or equipping of the Property or the rental, operation, or management of the Property or the payment of operating costs and expenses thereof, may do so in such amounts and to such persons as Mortgagee may deem appropriate.

Nothing contained herein shall be construed to require Mortgagee to advance or expend monies for any purpose mentioned herein, or for any other purpose.

9.     **Restrictions on Transfer**. Mortgagor (and for purposes of this Paragraph 9 Mortgagor shall mean not only Mortgagor but also any successor in interest who or which pursuant to the terms hereof has acquired the Property or the beneficial interest in any trust holding title thereto subject to this Mortgage) shall not create, effect, consent to, suffer, or permit any conveyance, sale (installment or otherwise), assignment, transfer, hypothecation, lien, pledge, mortgage, security interest, or other encumbrance or alienation of the Property or any part thereof or any of Mortgagor's right, title, or interest therein without regard to whether any such conveyance, sale (installment or otherwise) assignment, transfer, lien, pledge, mortgage, security interest, encumbrance, or alienation is effected directly, indirectly, voluntarily, or involuntarily, by Mortgagor, by another, by operation of law, or otherwise.

10.    **Events of Default**.

A.     The occurrence of any one or more of the following events is an Event of Default hereunder:

1.     The occurrence of a default under the Note.

4

2.     Mortgagor fails to perform or observe any other act, agreement, obligation, duty, or condition which Mortgagor is required to perform or observe hereunder, which failure continues for 10 days after Mortgagee gives Mortgagor written notice thereof (or such lesser time if the act which Mortgagor is required to perform is of an exigent or emergency nature) or, if by its nature such act, agreement, obligation, duty, or condition cannot be fully and completely performed or observed within said 10 day period, Mortgagor fails to commence to perform or observe such other act, agreement, obligation, duty, or condition within said 10 day period and to pursue the same diligently and in good faith thereafter.

B.     Upon occurrence of an Event of Default hereunder, Mortgagee is hereby authorized and empowered, at its option and without affecting the lien hereby created or the priority of said lien or any other right of Mortgagee hereunder, to declare, without further notice, all Indebtedness Hereby Secured to be immediately due and payable with interest thereon at the Default Rate, whether or not such Event of Default hereunder be thereafter remedied by Mortgagor, and Mortgagee may immediately proceed to do any one or more of the following, concurrently or in any order Mortgagor may elect:

1.     Foreclose this Mortgage.

2.     Exercise any right, power, or remedy provided by this Mortgage.

3.     Exercise any right, power, or remedy provided by the Note.

4.     Exercise any right, power, or remedy provided by law or in equity.

## 11.   Foreclosure.

A.     In any suit or proceeding or sale to foreclose the lien hereof, there shall be allowed and included as additional Indebtedness Hereby Secured in the decree of sale, all expenditures and expenses which may be paid or incurred by or on behalf of Mortgagee for reasonable attorney's fees, appraiser's fees, outlays for documentary and expert evidence, stenographer's charges, publication costs, and costs (which may be estimated as to items to be expended after entry of the decree) of procuring all such abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Mortgagee may deem reasonably necessary either to prosecute such suit or to evidence to bidders at sales which may be had pursuant to such decree the true conditions of the title to or the value of the Property. All expenditures and expenses of the nature mentioned in this Paragraph 11, and such other expenses and fees as may be incurred in the protection of the Property and rents and income therefrom and the maintenance of the lien of this Mortgage, including the fees of any attorney employed by Mortgagee in any litigation or proceedings affecting this Mortgage, the Note, or the Property, including probate and bankruptcy proceedings, or in preparation of the commencement or defense of any proceedings or threatened

5

suit or proceeding, or otherwise in dealing specifically therewith, shall be so much additional Indebtedness Hereby Secured and shall be immediately due and payable by Mortgagor, with interest thereon at the Default Rate until paid.

B.    Upon the filing of a complaint to foreclose this Mortgage or at any time thereafter, the court in which such complaint is filed may appoint a receiver of the Property. Such appointment may be made either before or after sale, without notice, without regard to solvency or insolvency of Mortgagor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not; and Mortgagee or any employee or agent of Mortgagee may be appointed as such receiver. Such receiver shall have the power to collect the rents, issues, and profits of the Property during the pendency of such foreclosure suit and during the full statutory period of redemption, if any, whether there be a redemption or not, as well as during any further times when Mortgagor, except for the intervention of such receiver, would be entitled to collection of such rents, issues and profits, and such receiver shall have all other powers which may be necessary or are usual in such cases for the protection, possession, control, management, and operation of the Property during the whole of said period. The court may, from time to time, authorize the receiver to apply the net income from the Property in payment in whole or in part of:

1.    The Indebtedness Hereby Secured or the indebtedness secured by a decree foreclosing this Mortgage, or any tax, special assessment, or other lien which may be or become superior to the lien hereof or of such decree, provided such application is made prior to the foreclosure sale.

2.    The deficiency in case of a sale and deficiency.

C.    The proceeds of any foreclosure sale of the Property shall be distributed and applied in the following order of priority:

1.    First, on account of all costs and expenses incident to the foreclosure proceedings.

2.    Second, all other items which, under the terms hereof, constitute Indebtedness Hereby Secured additional to that evidenced by the Note, with interest on such items as herein provided.

3.    Third, to interest remaining unpaid under the Note.

4.    Fourth, to the principal remaining unpaid under the Note.

5.    Lastly, to Mortgagor and Mortgagor's successors or assigns as their rights may appear.

6

12. <u>**Waiver of Right of Redemption and Other Rights**</u>. To the full extent permitted by law, Mortgagor hereby covenants and agrees that it will not at any time insist upon or plead, or in any manner whatsoever claim or take any advantage of, any stay, exemption, or extension law or any so-called "moratorium law" now or at any time hereafter in force, nor claim, take, or insist upon any benefit or advantage of or from any law now or hereafter in force providing for the valuation or appraisement of the Property, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provisions herein contained, or to any decree, judgment, or order of any court of competent jurisdiction; or before or after such sale or sales claim or exercise any rights under any statute now or hereafter in force to redeem the property to be sold or so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof. To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights of redemption whether exercisable or existing before or after sale under any order or decree of foreclosure of this Mortgage, on Mortgagor's own behalf, on behalf of all persons claiming or having an interest (direct or indirect) by, through, or under Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date hereof, it being the intent hereof that any and all such rights of redemption of Mortgagor and of all other persons are and shall be deemed to be waived to the full extent permitted by law. To the full extent permitted by law, Mortgagor agrees that it will not, by invoking or utilizing any applicable law or laws or otherwise, hinder, delay, or impede the exercise of any right, power, or remedy herein or otherwise granted or delegated to Mortgagee, but will suffer and permit the exercise of every such right, power, and remedy as though no such law or laws have been or will have been made or enacted. To the full extent permitted by law, Mortgagor hereby agrees that no action for the enforcement of the lien or any provision hereof shall be subject to any defense which would not be good and valid in an action at law upon the Note.

13. <u>**Rights Cumulative**</u>. Each right, power, and remedy herein conferred upon Mortgagee is cumulative and in addition to every other right, power, or remedy, express or implied, now or hereafter provided by law or in equity, and each and every right, power, and remedy herein set forth or otherwise so existing may be exercised from time to time as often and in such order as may be deemed expedient to Mortgagee. The exercise of one right, power, or remedy shall not be a waiver of the right to exercise at the same time or thereafter any other right, power, or remedy; and no delay or omission of Mortgagee in the exercise of any right, power, or remedy accruing hereunder or arising otherwise shall impair any such right, power, or remedy, or be construed to be a waiver of any default or acquiescence therein. Except as otherwise specifically required herein, notice of the exercise of any right, power, or remedy granted to Mortgagee by this Mortgage is not required to be given.

14. <u>**Successors and Assigns**</u>.

A. This Mortgage and each and every covenant, agreement, and other provision hereof shall be binding upon Mortgagor and Mortgagor's successors and assigns (including, without limitation, each and every record owner from time to time of

7

the Property or any other person having an interest therein), and shall inure to the benefit of Mortgagee and Mortgagee's successors and assigns. Wherever herein Mortgagee is referred to, such reference shall be deemed to include the holder or holders from time to time of the Note, whether so expressed or not; and each such holder from time to time of the Note shall have and enjoy all of the rights, privileges, powers, options, and benefits afforded hereby and hereunder and may enforce all and every of the terms and provisions hereof as fully and to the same extent and with the same effect as if such holder of the Note from time to time was herein by name specifically granted such rights, privileges, powers, options, and benefits and was herein by name designated Mortgagee.

B.     All of the covenants of this Mortgage shall run with the land and be binding on any successor owners of the Property. If the ownership of Property or any portion thereof becomes vested in a person or persons other than Mortgagor, Mortgagee may, without notice to Mortgagor, deal with such successor or successors in interest of Mortgagor with reference to this Mortgage and the Indebtedness Hereby Secured in the same manner as with Mortgagor without in any way releasing or discharging Mortgagor from its obligations hereunder. Mortgagor will give immediate written notice to Mortgagee of any conveyance, transfer, or change of ownership of the Property, but nothing in this Paragraph 14 shall vary or negate the provisions of Paragraph 9 hereof.

**15.     Effect of Extensions and Amendments.** If the payment of the Indebtedness Hereby Secured, or any part thereof, shall be extended pursuant to the terms of the Note or otherwise or if said terms shall be varied, or if any part of the security therefor shall be released, all persons now or at any time hereafter liable therefor, or interested in the Property, shall be held to assent to such extension, variation, or release, and their liability, and the lien, and all provisions hereof, shall continue in full force and effect, the right of recourse against all such persons being expressly reserved by Mortgagee notwithstanding any such extension, variation, or release. Any person, firm, or corporation taking a junior mortgage or other lien upon the Property or any part thereof or any interest therein (it being understood and agreed that no such junior lien shall be created except as permitted under the terms of this Mortgage) shall take the said lien subject to the rights of Mortgagee to amend, modify, extend, or release the Note or this Mortgage, in each and every case without obtaining the consent of the holder of such junior lien and without the lien of this Mortgage losing its priority over the rights of any such junior lien.

**16.     Hazardous Materials Representations, Warranties, and Indemnifications.**

A.     Mortgagor hereby covenants with and warrants and represents to Mortgagee that neither Mortgagor nor, to the best knowledge of Mortgagor, any other person has ever caused or permitted any "Hazardous Material" (as hereinafter defined) to be placed, held, located, or disposed of on, under or at the Property or any part thereof or into the atmosphere or any watercourse, body of water or wetlands, or any other real property adjacent to or in the vicinity of the Property, and neither the Property

8

nor any part thereof, nor any other real property legally or beneficially owned (or any interest or estate in which is owned) by Mortgagor (including, without limitation, any property owned by a land trust the beneficial interest in which is owned, in whole or in part, by Mortgagor) has ever been used (whether by Mortgagor or, to the best knowledge of Mortgagor, by any other person) as a site for treatment, storage, or disposal (whether permanent or temporary) of any Hazardous Material.

B.    Mortgagor hereby indemnifies Mortgagee and agrees to hold Mortgagee harmless from and against any and all losses, liabilities, damages, injuries, costs, expenses, and claims of any and every kind whatsoever (including, without limitation, court costs and attorneys' fees) which at any time or from time to time may be paid, incurred, or suffered by, or asserted against, Mortgagee for, with respect to, or as a direct or indirect result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from, the Property into and upon any land, the atmosphere, or any watercourse, body of water or wetland, of any Hazardous Material as hereinafter defined (including, without limitation, any losses, liabilities, damages, injuries, costs, expenses, or claims asserted or arising under the Hazardous Materials Statutes as hereinafter defined); and the provisions of and undertakings and indemnification set out in this sentence shall survive the satisfaction and release of this Mortgage and the payment and satisfaction of the Indebtedness Hereby Secured and shall continue to be the personal liability, obligation, and indemnification of Mortgagor binding upon Mortgagor forever.  The provisions of the preceding sentence shall govern and control over any inconsistent provision of the Note and this Mortgage including, without limitation, any non-recourse provision contained herein or any of the foregoing agreements (provided that nothing contained herein shall be construed as creating any personal liability on the part of a land trustee holding title to the Property).  As used herein, "Hazardous Material" means and includes any hazardous substance or any pollutant or contaminant defined as such in (or for purposes of) the Comprehensive Environmental Response, Compensation and Liability Act, any so-called "Superfund" or "Superlien" law, the Toxic Substances Control Act, or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance or material, as now or at any time hereafter in effect (collectively, "Hazardous Materials Statutes"), or any other hazardous, toxic, or dangerous waste, substance, or material or container therefor.

## 17.    Representations, Warranties, and Indemnifications.

A.    Mortgagor hereby represents, warrants, covenants, and agrees that the proceeds of the Note will be used for business purposes and that the principal obligation secured hereby constitutes a "business loan" within the meaning of 815 ILCS 205/4(c), and is a non-usurious business loan under the laws of the State of Illinois.

B.    Mortgagor hereby represents and warrants that this Mortgage has been duly executed by or on behalf of Mortgagor, that the person executing this Mortgage on behalf of Mortgagor has all requisite power and authority to do so, and that this

9

Mortgage is valid, binding on, and enforceable against Mortgagor according to its terms, except to the extent that the same may be modified by bankruptcy or insolvency laws or other laws affecting the rights of creditors generally.

C. Mortgagor indemnifies Mortgagee against and agrees to hold Mortgagee harmless from any and all manner of suits, actions, claims, causes, and causes of action, judgments, fines, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, executions, claims, and demands whatsoever, in law or in equity, including without limiting the generality of the foregoing attorney's fees which Mortgagee may suffer or to which Mortgagee may be exposed as a result of the falsity or inaccuracy of any representation or warranty made or the breach or non-performance of any covenant or undertaking to be performed by Mortgagor in this Mortgage.

**18.** **Superior Liens**. This Mortgage is junior and subordinate to the following mortgages and liens:

Mortgage dated September 30, 2005 and recorded by the Cook County Recorder of Deeds on October 13, 2005 as document no. 0528605001 and modification thereof recorded by the Cook County Recorder of Deeds on May 18, 2007 as document no. 0713839098

Financing statement and recorded by the Cook County Recorder of Deeds on October 13, 2005 as document no. 0528605004

Mortgage dated September 17, 2007 and recorded by the Cook County Recorder of Deeds on October 4, 2007 as document no. 0727718095

**19.** **Notices**. Any notice, demand, or other communication which any party hereto may desire or may be required to give to any other party hereto shall be in writing and is given when personally delivered or on the date deposited in United States mail for delivery. Notices sent by United States mail shall be registered or certified, postage prepaid. Notices shall be addressed to a party at its address set forth herein or to such other address as the party to receive such notice may have designated to the other party hereto by notice in accordance herewith, provided that a notice of change of address shall not be effective until actually received by the party to which it is given.

**20.** **Interpretation and Enforcement; Time of Essence; Relationship of Parties**.

A. This Mortgage shall be construed and enforced according to the laws of the State of Illinois. The captions and headings are for convenience only and are not to be construed as confining or limiting in any way the scope or intent of the provisions hereof. Whenever the context requires or permits, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall be freely interchangeable.

10

B.      Time is of the essence of the Note and this Mortgage.

C.      Nothing contained herein or in the Note shall be deemed to create a joint venture or partnership relationship between Mortgagor and Mortgagee; it being understood that solely the relationships of lender and borrower and mortgagor and mortgagee, as the case may be, shall be created in connection herewith. Anything contained herein to the contrary notwithstanding, it is expressly understood and agreed that Mortgagee's inspection and approval of the documentation pertaining to this Mortgage and any inspection of the Property made by Mortgagee shall be solely for Mortgagee's benefit, and Mortgagee shall have no liability to Mortgagor or any other person or entity by reason thereof.

**IN WITNESS WHEREOF,** Mortgagor has caused this Mortgage to be duly signed, sealed, and delivered on or as of the day and year first above written.

13th & State, L.L.C.

By:_____
        Warren Barr, manager

STATE OF ILLINOIS     )
                      ) SS
COUNTY OF COOK        )

### ACKNOWLEDGMENT

I, the undersigned, a notary public in and for the State and County aforesaid, do hereby certify that Warren Barr, the manager of 13th & State, L.L.C., an Illinois limited liability company, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that, as such manager, he signed and delivered the said instrument as his free and voluntary act for the uses and purposes therein set forth.

Given under my hand and official seal this __1st__ day of January, 2008.

_Deborah J Camfield_
Notary Public
My commission expires:__2-13-12__

```
OFFICIAL SEAL
DEBORAH J CAMFIELD
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/13/12
```

This document prepared by and when recorded mail to:

Jonathan L. Mills
Sugar, Friedberg & Felsenthal LLP
30 North LaSalle Street
Suite 3000
Chicago, Illinois 60602

11

EXHIBIT TO MORTGAGE

Legal description:

Parcel 1: Units 601, 606, 701, 703, 717, 801, 807, 808, 809, 810, 904, 907, 908, 911, 1010, 1013, 1016, 1101, 1104, 1110, 1112, 1113, 1117, 1204, 1212, 1217, 1218, 1304, 1308, 1312, 1313, 1317, 1404, 1408, 1410, 1411, 1412, 1418, 1504, 1507, 1510, 1512, 1513, 1518, 1604, 1606, 1608, 1610, 1613, 1618, 1704, 1706, 1708, 1710, 1712, 1713, 1714, 1718, 1801, 1803, 1805, 1806, 1807, 1810, 1813, 1818, 1906, 1908, 1909, 1910, 1912, 1913, and 1914 in the Vision on State Condominium as delineated on a survey of the following described real estate:

Parts of subdivision of the West ½ of Block 4 in Assessor's Division of the Northwest Fractional ¼ of Section 22, Township 39 North, Range 14 East of the Third Principal Meridian, in Cook County, Illinois

which survey is attached as Exhibit "C" to the Declaration of Condominium Ownership recorded June 11, 2007 as document no. 0716222081 as amended, together with their respective undivided percentage interests in the common elements, all in Cook County, Illinois

Parcel 2: the exclusive right of each of the aforesaid Units to use storage lockers, parking spaces, and other limited common elements as set forth in the Declaration of Condominium Ownership recorded June 11, 2007 as document no. 0716222081 as amended

Address:

1255 South State Street, Chicago, Illinois

Permanent index numbers:

17-22-100-006
17-22-100-007
17-22-100-009
17-22-100-028

REDACTED