IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUARANTEED RATE, INC., <br>                             Plaintiff, <br>    v. <br> <br> WARREN BARR, ANTHONY LUPESCU, 13th & STATE, LLC, RENAISSANT DEVELOPMENT GROUP, LLC, RENAISSANT MANAGEMENT GROUP, INC., RICHARD BORKOWSKI, JOHN BORKOWSKI, EDWARD BORKOWSKI, RJE INVESTMENTS, LLC, JIM CARROL, VASILE SAVA, GLOBAL FINANCING INVESTMENTS, CORP., ASIF ASLAM, ASLAM GROUP, INC., JEFFREY BUDZIK, BUDZIK & DYNIA, LLC, TRACY CAGALA, STEWART TITLE GUARANTY COMPANY, ROBERT LATTAS, LATTAS LAW, LLC, a/k/a the LAW OFFICES OF ROBERT D. LATTAS, HYUN SOOK KIM, ABDUR RAHMAN, IQBAL WASEEM, MICHELLE DRUSKA, ROBERT J. JILEK, and SOUTHWEST APPRAISAL & CONSULTING, INC. <br>                             Defendants. | 12 C 5362 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Last year, Guaranteed Rate, Inc. filed a lawsuit in this Court alleging that twenty-six individuals and entities (collectively, "Defendants") conspired to defraud it in connection with the sale of real estate in a condominium development in Chicago, Illinois. Guaranteed Rate now moves pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend this Court's December 12, 2012 Memorandum Opinion and Order dismissing Count I of its Amended Complaint and relinquishing supplemental jurisdiction over the its remaining state law claims. For the reasons stated below, Guaranteed Rate's Motion to Alter or Amend this Court's December 12, 2012 Order is denied.

## BACKGROUND FACTS

On September 25, 2012, Guaranteed Rate filed an Amended Complaint alleging that various individuals and entities conspired to defraud Guaranteed Rate in connection with the sale of real estate in a condominium development ("the Development") in Chicago, Illinois. A full description of the claims therein and the facts giving rise to the Amended Complaint are set forth in the Court's previous opinion. *Guaranteed Rate, Inc. v. Barr*, --- F.Supp.2d ---, 2012 WL 6189013 (N.D. Ill. Dec. 12, 2012). The Court assumes familiarity with those facts. On December 12, 2012, the Court issued a Memorandum and Opinion Order (the "Dismissal Order") dismissing Count I of the Amended Complaint, finding that Guaranteed Rate had failed to state a claim upon which relief could be granted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and specifically 18 U.S.C. § 1962(c). Because Guaranteed Rate's RICO claim was the sole basis for the Court's federal subject matter jurisdiction, the Court declined to exercise supplemental jurisdiction over Guaranteed Rate's nineteen remaining state law claims.

On January 1, 2013, Guaranteed Rate timely filed a motion pursuant to Federal Rule of Civil Procedure 59(e) to Alter or Amend this Court's Dismissal Order. Guaranteed Rate argues that (1) it can cure the deficiencies in its Amended Complaint as identified in the Court's Dismissal Order based on newly discovered evidence that could not have been presented prior to the entry of judgment, and (2) the Court must retain supplemental jurisdiction over its state law claims because it cannot re-file those claims in state court and those claims arise out of the same nucleus of operative facts as Guaranteed Rate's RICO claim.

## STANDARD OF REVIEW

"Once judgment has been entered, there is a presumption that the case is finished, and the

burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). However the Court may grant a Rule 59(e) motion to alter or amend judgment if the movant " 'clearly establish[es]' (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (quoting *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)); *see also Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (motion to amend or alter judgment appropriate where movant "presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact") (quoting *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). This rule "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller*, 683 F.3d at 813 (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)). However, such motions are not appropriate vehicles for relitigating arguments that the district court previously rejected, or for arguing issues or presenting evidence that could have been raised during the pendency of the motion presently under reconsideration. *Sigworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007). Whether to grant a motion to alter or amend judgment under Rule 59 is squarely within the Court's discretion and will only be disturbed for an abuse of discretion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (citations omitted).

**DISCUSSION**

I.    **Guaranteed Rate's Motion to Alter or Amend Judgment on Count I (RICO)**

Count I of Guaranteed Rate's Amended Complaint alleged RICO violations against the following defendants: Robert D. Lattas; Lattas Law, LLC d/b/a Law Offices of Robert D. Lattas; 13th & State, LLC; RJE Investments, LLC; Richard Borkowski; John Borkowski; Edward Borkowski; and Warren Barr (collectively, "the RICO Defendants"). The Court found that Guaranteed Rate's Amended Complaint failed to allege the existence of a RICO enterprise or a pattern of racketeering activity and thus failed to state a RICO claim upon which relief could be granted.

Guaranteed Rate states in its Motion that on October 25, 2012, it received from Defendant James Carrol 7,399 individual documents pertaining to the Development and 6.75 gigabytes of electronically stored information composed of 9,775 individual files. (Cunningham Decl. ¶ 3, Ex. 1.) These documents, according to Guaranteed Rate, cover the time period from 2005 through October 2012 and consist of contracts, e-mails, marketing materials, spreadsheets, tax information, and financial information for Defendants 13th & State, Renaissant Development Group, LLC, Renaissant Management Group, Inc. and other entities used by certain individual defendants during the last seven years. (*Id.* ¶ 4.) Guaranteed Rate states it began review of the materials immediately upon receipt but was not able to complete its review and assess the new evidence prior to this Court's ruling on the pending motions to dismiss due to the number of files and documents and the intricacy, complexity, and relationship of the transactions. (*Id.* ¶ 5.) Guaranteed Rate states that it in fact has still not completed its review of the October 25 document production and has continued to review the documents after the Court's December 12,

2012 ruling. (*Id.* ¶¶ 5–6.) Guaranteed Rate maintains that evidence contained within these documents will allow it to cure the deficiencies noted in its Amended Complaint.

Guaranteed Rate's Motion to Alter or Amend Judgment must be denied because the documents produced on October 25, 2012 do not constitute "newly discovered" evidence and because Guaranteed Rate has failed to show that it could not with reasonable diligence have obtained the evidence prior to this Court's December 12 ruling. In order to prevail on a Rule 59(e) motion based on newly discovered evidence, the movant must "show not only that [the] evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269 (quoting *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963), *cert. denied,* 377 U.S. 923 (1964)); *see, e.g., Figgie Intern. Inc. v. Miller*, 966 F.2d 1178, 1180 (7th Cir. 1992) (denying plaintiff's Rule 59(e) motion because plaintiff did not meet its burden of showing how the alleged new evidence was previously unavailable nor offer anything more than hearsay in an affidavit as "new evidence"). Thus evidence available to a movant prior to judgment and during the pendency of a motion is not "newly discovered" for the purposes of Rule 59(e). *See id*; *LB Credit Corp.*, 49 F.3d at 1267 (motion to alter or amend a judgment not appropriately used to present evidence that was available prior to judgment); *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008) ("As for the new evidence, motions under Rule 59(e) cannot be used to present evidence that could have been presented before judgment was entered."); *see also see also Sigworth*, 487 F.3d at 512 ("[I]t is well-settled that a Rule 59(e) motion is not properly utilized to advance arguments or theories that could and should have been made before the district court rendered a judgment …."); *Wainwright v. Doria*, 65 F.3d 171, at *2 (7th Cir. 1995)

(unpublished) (denying Rule 59(e) motion because movant admitted that "new evidence" was discovered before the court ruled on its motion to dismiss).

In this case, Guaranteed Rate admits that it gained possession of the documents it claims constitute "new evidence" on October 25, 2012. The Court did not issue its Dismissal Order until nearly seven weeks after that date. Thus, it is undisputed that Guaranteed Rate had both knowledge and possession of the October 25 document production almost seven weeks before this Court's entry of judgment against it. "In order to keep litigation costs down," however, Guaranteed Rate "did not ask its [sic] co-counsel, Seyfarth Shaw LLP, to assist in [the] review" of the documents. (Cunningham Decl. ¶ 5.)

As an initial matter, the Court is aware of no exception to the "newly discovered" requirement that allows litigants to belatedly present previously discovered evidence in an effort to keep litigation costs low. Such an exception would shift costs, not reduce them. Defendants would find themselves expending valuable time, energy, and resources litigating dispositive motions only to learn later that it was all for naught – that they had been wasting their time arguing over the sufficiency of dated pleadings. Then Defendants would, as in this case, find themselves expending additional resources litigating motions to alter or amend the court's ruling, which, if granted under a "previously discovered yet not-fully-reviewed" exception, would bring everyone back to square one. "Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless." *Frietsch*, 56 F.3d at 828. Plaintiffs would reap the benefit of being able to wait and see if a second bite at the apple is necessary while everyone else—including defendants and the courts—unwittingly prepare and review motions derived from a dated universe of facts. To avoid such a result, "[l]itigation must sometime come to an end, and the limit on Rule 59 motions advances that goal." *Dal Pozzo*, 463 F.3d at 615.

Furthermore, even assuming Carrol's document production proved too voluminous for a timely substantive review, Guaranteed Rate could easily have informed the Court of the production and sought the Court's leave to file a Second Amended Complaint. Or, at the very least, Guaranteed Rate could have requested an extension of time or stay of the briefing schedule so that it could review the documents provided by Carrol to determine whether a Second Amended Complaint would be appropriate. *See, e.g., Perez v. Autozone, Inc.*, No. 07 C 1955, 2008 WL 961583, at *2 (Kocoras, J.) (N.D. Ill. Apr. 8, 2008) (denying plaintiffs' Rule 59(e) motion because plaintiffs failed to request an extension of time or otherwise indicate to the court that they were unable to meet certain discovery deadlines). Instead Guaranteed Rate decided to wait for this Court to review and issue a lengthy memorandum on its deficient and dated Amended Complaint before mentioning that it had obtained new evidence. Guaranteed Rate is not "entitled to wait and see what the district court [says] before making any changes to the complaint—because it would impose unnecessary costs and inefficiencies on both the courts and party opponents." *Pugh v. Tribune, Co.*, 521 F.3d 686, 698 (7th Cir. 2008). Having decided to stand on its Amended Complaint, Guaranteed Rate cannot properly use Rule 59 to alter an unfavorable outcome by placing before the Court evidence it had discovered *and* begun reviewing nearly two months before this Court's ruling. *See Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 252 (7th Cir. 1987) (motion to reconsider properly denied where plaintiff "failed to make a showing that it had exercised due diligence in attempting to produce the evidence or argument while the motion for summary judgment was pending" and "neither asked the judge for more time or for an order compelling any depositions [the plaintiff] felt relevant to the pending motion"); *see also Fannon v. Guidant Corp.*, 583 F.3d 995, 1003 (7th Cir. 2009) (affirming denial of Rule 59(e) motion, finding that district court was "entitled to take into

account the fact that the plaintiff's … apparently made a strategic decision not to put their new evidence into the record before the court ruled on [the defendant's] motion to dismiss"); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting its case after the court has ruled against him."). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to judgment." *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 730 (7th Cir. 1999) (quoting *Moro*, 91 F.3d at 876); *see also Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 615 (7th Cir. 2006) ("Motions to alter or amend judgments are no place to start giving evidence that could have been presented earlier …. 'Unlike the Emperor Nero, litigants cannot fiddle as Rome burns.' ") (quoting *Vasapolli v. Rostoff*, 39 F.3d 27, 36 (1st Cir. 1994)). Accordingly, Guaranteed Rate's Motion to Alter or Amend the Court's dismissal of its RICO claim pursuant to Rule 59(e) is denied because it is based on evidence that was neither "newly discovered" nor incapable of presentation prior to the Court's December 12 judgment.

Additionally, as Guaranteed Rate did not request in its briefing an opportunity to replead in the event its claims were dismissed, the Court did not err in dismissing Guaranteed Rate's RICO claim with prejudice. *See James Cape & Sons, Inc. v. PCC Constr. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006) (holding that district court did not err in dismissing plaintiff's complaint with prejudice, rather than without prejudice and with leave to amend, where plaintiff did not request such leave, finding that "district court could have quite reasonably believed that an amended complaint would suffer the same fatal flaws as the one before it, and that the 'interests of justice' did not require permission to amend"); *Simkus v. United Air Lines, Inc.*, No. 11 C

2165, 2012 WL 3133603, at *6 (N.D. Ill. July 31, 2012) (Feinerman, J.) (denying plaintiff opportunity to replead RICO claim where plaintiff did not ask for an opportunity in the event its claims are dismissed).

> II. **Guaranteed Rate's Motion to Vacate the Court's Dismissal of the Remaining State Law Claims is Denied**

After dismissing Guaranteed Rate's RICO count for failure to state a claim, the Court declined to exercise supplemental jurisdiction over Guaranteed Rate's nineteen remaining state law claims. The Court explained that where "the sole basis for invoking federal jurisdiction is non-existent … the federal courts should not exercise supplemental jurisdiction over [a plaintiff's] remaining state law claims." *Aztar Ind. Gaming*, 351 F.3d 294, 300 (7th Cir. 2003). This rule, however, is subject to three exceptions: (1) when re-filing of the state claims is barred by the statute of limitations; (2) where substantial judicial resources have already been expended on the state claims; (3) and when it is clearly apparent how the state claim is to be decided. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). Guaranteed Rate submits that the first of these exceptions applies because Illinois's single re-filing rule precludes it from pursuing its remaining claims in state court.

Guaranteed Rate initially filed suit in the Circuit Court of Cook County on July 8, 2011, case number 2011-L-7114. (Dkt. No. 154-1, p.1.) On December 29, 2011, the circuit court granted the defendants' motions to dismiss and gave Guaranteed Rate 21 days to re-plead. (*Id.* ¶ 22.) On February 10, 2012, instead of filing an amended complaint, Guaranteed Rate voluntarily dismissed its case in the circuit court pursuant to 735 ILCS 5/2-1009.[1] (Dkt. No. 143-1, ¶ 2.) On July 9, 2012, it re-filed in this Court. (Dkt. No. 1.)

---

[1] 735 ILCS 5/2-1009 provides that a "plaintiff may, at any time before trial or hearing begins, upon notice

735 ILCS 5/13-217 ("Section 13-217") provides that:

> where the time for commencing an action is limited, if … the action is dismissed by a United States District Court for lack of jurisdiction, … then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff … may commence a new action within one year or within the remaining statute of limitations, whichever is greater, after … the action is dismissed by the United States District Court for lack of jurisdiction.

735 ILCS 5/13-217.

However, the Illinois Supreme Court has held that a party may re-file its case only once after its complaint has been voluntarily dismissed, even if the party's claims are not otherwise barred by the statute of limitations. *Timberlake v. Illini Hospital*, 676 N.E.2d 634, 636 (Ill. 1997). This rule applies even where, as here, a plaintiff voluntarily dismisses its state suit to re-file in federal court and the federal court subsequently disposes of the federal claims and declines to exercise supplemental jurisdiction over related state law claims. *See id.*

Although the single re-filing rule set forth in *Timberlake* may preclude Guaranteed Rate from re-filing its state law claims in the Circuit Court of Cook County, the statute of limitations exception to relinquishing supplemental jurisdiction does not apply in this case because Section 13-217 is not a statute of limitation. Though part of the Illinois statute of limitations scheme, *Evans v. Lederle Labs.*, 167 F.3d 1006, 1110 (7th Cir. 1999), Section 13-217 imposes no limitation period of its own upon any causes of action arising under Illinois law. Rather, it is a " 'savings statute' [which] enumerates the circumstances under which the statute of limitations for certain actions *may be extended.*" *Reyes v. Court of Claims of State of Ill.*, 702 N.E.2d 224, 230 (Ill. App. Ct. 1998) (emphasis added); *see also DeClerck v. Simpson*, 577 N.E.2d 767, 770 (Ill. 1991) ("The savings statute … allows a plaintiff, whose original action has been dismissed on

---

to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." 735 ILCS 5/2-1009(a).

specific grounds, to file an action again though the statute of limitations has run."). Because Section 13-217 serves to relieve litigants of the limitations period, not impose one of its own, district courts have relied on the statute as a basis for *denying* supplemental jurisdiction, not retaining it. *See, e.g., Sharp Elec. Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) ("While it is likely that the statute of limitations has technically run on some, if not all, of [plaintiff's] state-law claims, there is an Illinois statute that authorizes tolling in these circumstances. If it applies, then [the plaintiff's] claims would not be time-barred if it pursues them in state court."); *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (relinquishing supplemental jurisdiction over plaintiff's remaining defamation because Section 13-217 tolled the statute of limitations and thus the plaintiff was not barred by the limitations period from filing her claim in state court). Therefore, Guaranteed Rate's claims in this case are not time-barred pursuant to a statute of limitation, but rather limited by an Illinois rule designed to prevent multiple re-filings.[2] Accordingly, the statute of limitations exception to the general rule does not apply.

The Court recognizes that two courts in this district have found the exercise of supplemental jurisdiction appropriate under circumstances similar to those presented here. In *Metropolitan Life Ins. Co. v. O'M & Associates LLC*, 2009 WL 3015210, at *7 (N.D. Ill. Sept. 16, 2009) (Norgle, J.), the district court retained jurisdiction over the plaintiff's state law claims after determining that Illinois's single re-filing rule would likely bar the plaintiff from re-filing

---

[2] The Court also notes that Guaranteed Rate's claims against Lattas are not barred because Lattas was not named a defendant in Guaranteed Rate's state court action. *Hendricks v. Victory Memorial Hospital*, 755 N.E. 2d 1013, 1015 (Ill. App. Ct. 2001) (defendant who was not a party to the first action may not rely on Section 13-217 to claim that a second complaint is an impermissible second re-filing); *Flynn v. Allis Chalmers Corp.*, 634 N.E.2d 8, 10 (Ill. App. Ct. 1994) (limitation imposed by Section 13-217 inapplicable where defendant in re-filed case was not a defendant in the original action).

11

its claims in state court. Similarly in *Holdt v. A-1 Tool*, No. 04 C 4123, 2010 WL 3034761, at *2 (Manning, J.), the court granted a motion to vacate after learning that the plaintiff had previously filed suit in state court and would thus likely be precluded from pursuing its remaining claims under Illinois's single re-filing rule. This Court respectfully disagrees with *Holdt* and *Metropolitan Life Ins. Co.*, and holds that the Illinois single re-filing rule cannot force a federal court to retain supplemental jurisdiction over state-law claims based on the statute of limitations exception.[3]

To hold otherwise would effectively create a fool proof four-step plan to force federal courts to hear cases arising entirely under state law without complete diversity of parties. A plaintiff desiring a federal forum for its state law claims need only (1) file its case in state court, (2) voluntarily dismiss the case, (3) re-file in the district court and assert a tentative but colorable federal claim, and (4) upon dismissal of its federal claim, argue that the federal court cannot relinquish supplemental jurisdiction due to Illinois's single re-filing rule. In other words, litigants would be guaranteed a federal forum to litigate their state law claims even where all federal causes of action are dismissed by simply filing and voluntarily dismissing in state court before filing a federal suit. Under this approach, retaining supplemental claims in federal court would become the general rule as opposed to the exception. *Cf. Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) ("A decision to relinquish pendent jurisdiction before the federal claims have been tried is, as we have said, the norm, not the exception, and such a decision will be reversed only in extraordinary circumstances."); *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he *general rule* is that, when all federal claims are

---

[3] In *Metropolitan Life Ins. Co.* the court also provided a separate and independent basis for retaining supplemental jurisdiction, finding that the third exception to the general rule applied because the "parties [had] been litigating [the] matter for almost three years and [had] conducted significant discovery." 2009 WL 3015210, at *7.

12

dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims ….") (emphasis added). This Court finds it inconceivable that the exception to the general rule advising against the exercise of supplemental jurisdiction where no federal claims remain was intended to leave the federal district courts vulnerable to such an easily exploitable loophole.

To the extent this outcome yields a harsh result for Guaranteed Rate, it is a result occasioned by Guaranteed Rate's own litigation strategy. Like countless plaintiffs before it, Guaranteed Rate made the strategic decision to seek federal jurisdiction, treble damages, and attorneys' fees by attempting to federalize a fraud case using the civil RICO statute. *See Meier v. Musburger*, 588 F.Supp.2d 883, 899 (N.D. Ill. 2008) (Cole, J.) ("[F]rom the beginning, the breadth of RICO's text and the lure of treble damages and attorneys' fees proved irresistible to those bent on federalizing such claims.") (collecting cases). Having decided to "wedge" an "ordinary [fraud] dispute into a RICO case," *id*, Guaranteed Rate was still under no obligation to voluntarily dismiss its case before the Circuit Court of Cook County to re-file here. It is well established "that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 459 (1990) (collecting cases). The Supreme Court has made clear that this includes claims arising under civil RICO:

> The precise question presented, therefore, is whether state courts have been divested of jurisdiction to hear civil RICO claims by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests. Because we find none of these factors present with respect to civil claims arising under RICO, we hold that state courts retain their presumptive authority to adjudicate such claims.

*Id.* at 460 (internal citations and quotations omitted).

Thus Guaranteed Rate had the ability to pursue its RICO claim in the state court; it chose not to. Instead, it chose to voluntarily dismiss its state court case and bring RICO allegations in a separate suit. Then, once in federal court, Guaranteed Rate made the strategic decision to conserve its resources and stand on its Amended Complaint despite having obtained documents that potentially addressed deficiencies identified by various defendants in their motions to dismiss. Rule 59(e) "does not provide a vehicle for a party to undo" such "procedural failures …." *Popovits*, 185 F.3d at 730. Accordingly, the Court denies Guaranteed Rate's Motion to Alter or Amend the Court's decision to relinquish supplemental jurisdiction over its state law claims.

## CONCLUSION AND ORDER

For the reasons stated, Guaranteed Rate's Motion to Alter or Amend this Court's December 12, 2012 Order is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 5, 2013